637 A.2d 302

COMMONWEALTH of Pennsylvania

v.

**Anthony ADAMO, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 6, 1993.

Filed Feb. 10, 1994.

530

Carol K. Alexander, Asst. Public Defender, Newtown, for appellant.

Christopher H. Asplen, Asst. Dist. Atty., Doylestown, for Com., appellee.

Before POPOVICH, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

In this appeal, Anthony Adamo, Jr., asks that we declare the Child Luring Statute, 18 Pa.C.S. § 2910, *inter alia,* unconstitutional as void for vagueness and facially overbroad. We decline to do so and we affirm.

On November 11, 1991, Adamo was arrested and charged with criminal attempt to lure a child into a motor vehicle, 18 Pa.C.S. § 901, 18 Pa.C.S. § 2910; bail was set at $25,000. On February 20, 1992, a preliminary hearing was held before the local District Justice, who found sufficient evidence to hold Adamo for trial. Adamo's trial was scheduled to be held on June 16, 1992. By stipulation of the parties, the evidence to be considered by the trial court sitting without a jury was the transcript of Adamo's preliminary hearing. The transcript consisted, in the main, of the uncontradicted testimony of the intended victim. The parties also agreed of record that, in lieu of closing arguments, the parties would submit briefs: Adamo's brief was to be filed in three months, the Commonwealth's answering brief would be due 30 days later. Adamo's brief was filed on September 15, 1992; the Commonwealth's brief was filed on October 22, 1992. On November 10, 1992, Adamo was released on his own recognizance. On November 12, 1992, bail was again set at $25,000 ($2,500 cash), and a bench warrant was issued. On December 8, 1992, oral argument was held, and Adamo presented an oral motion to dismiss with prejudice for failure to comply with Pa.R.Crim.P. 1122. On January 4, 1993, the trial court returned a verdict of guilty; two days later, on January 6, 1993, a motion to release Adamo on his own recognizance was denied, however, Adamo was given the right to renew his bail request in the event "an appropriate treatment plan may be devised." On April 16, 1993, a sentence of time served was imposed, seventeen months, four days. This appeal followed the denial of post-verdict motions.

Adamo charges that the trial court erred in: (1) finding him guilty of the attempt to lure a child into a motor vehicle on the basis of insufficient evidence; failing to declare the Child Luring Statute which sets forth the crime of "luring a child into a motor vehicle" (2) unconstitutional as void for vagueness; as well as (3) unconstitutional as facially overbroad; and, (4) failing to grant his motion to dismiss based on the trial court's failure to render a timely verdict within seven

days of the submission of the case as required by Pa. R.Crim.P. 1122.

■ First, Adamo contends that the trial court erred in finding him guilty when the Commonwealth's evidence was insufficient to prove beyond a reasonable doubt that he took a substantial step toward luring a child into a motor vehicle. In reviewing the sufficiency of the evidence, "we must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offense beyond a reasonable doubt." *Commonwealth v. Bricker*, 525 Pa. 362, 366, 581 A.2d 147, 148 (1990); *Commonwealth v. Campbell*, 425 Pa.Super. 514, 625 A.2d 1215 (1993). It is the function of the fact-finder to pass upon the credibility of the witnesses and to determine the weight to be accorded the evidence produced at trial. *Campbell, supra.* The fact-finder is free to believe all, part, or none of the evidence introduced. *Id.* The facts and circumstances established at trial need not be absolutely incompatible with the innocence of the defendant, but the question of any doubt is for the trier of fact unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Id.*

The evidence established that on November 11, 1991, Adamo approached the intended victim, then age 16 years, eleven months, in the Neshaminy Mall, and asked him if he were interested in a landscaping job. The intended victim said that he was interested. Following an interruption where both Adamo and the intended victim answered questions for a survey taker, Adamo asked the intended victim if "he would like to make a thousand dollars for a half an hour." N.T. 2/20/92 at 5. When the intended victim inquired what he would be doing, Adamo responded that his intended victim would find out what he was to do when the intended victim "went out to Adamo's car." *Id.* The intended victim also testified that Adamo told him that "you can't tell anybody I'm . . . I'll get in trouble. You're a minor." *Id.* at 6. Adamo told the intended victim "[i]f you decide not to do this, then just

don't come back and don't tell anyone. Just don't tell anyone." *Id.* at 12. Adamo told the intended victim where he would be waiting and the two separated. *Id.* Previously, Adamo had cautioned the intended victim not to tell his mother if he agreed to do what Adamo requested. *Id.* at 6. Instead, the intended victim went to the store in the Mall where his mother was employed to tell her about Adamo's overtures. Upon hearing her son's story, the mother of the intended victim called the police. When the police arrived at the Mall, Adamo was identified by the intended victim. The intended victim, when asked if he were afraid of what Adamo was going to do to him, responded that he "was afraid of what [Adamo] was going to do to him when we got to the car or outside," and stated that he thought Adamo was going to try something "sexual." *Id.* at 15.

The crime of luring a child into a motor vehicle is defined by statute as follows:

### § 2910. Luring a child into a motor vehicle

A person who lures a child into a motor vehicle without the consent, express or implied, of the child's parent or guardian, unless the circumstances reasonably indicate that the child is in need of assistance, commits a misdemeanor of the first degree.

Act of 1990, Feb. 2, P.L. 6, No. 4, § 3, effective in 60 days.

Criminal attempt is found where a person, while possessing intent to commit a crime, does an act which constitutes a substantial step toward commission of that crime. 18 Pa.C.S. § 901(a); *Commonwealth v. Henley,* 504 Pa. 408, 474 A.2d 1115 (1984); *Commonwealth v. Humphreys,* 367 Pa.Super. 154, 532 A.2d 836 (1987), *appeal denied,* 518 Pa. 624, 541 A.2d 1136 (1988).

■ The evidence in this case consisted mainly of the testimony of the intended victim. The intended victim testified that he was approached by Adamo and offered one thousand dollars for one-half hour of work. The intended victim also testified that Adamo would not tell him the kind of work involved unless he accompanied Adamo to Adamo's car.

Thus, the intent of Adamo to lure his planned victim into his car is apparent. By approaching the intended victim and offering one thousand dollars for one-half hour of work, Adamo took a substantial step toward the crime of luring a child into a motor vehicle.

■ Adamo also argues that the Commonwealth failed to prove beyond a reasonable doubt that Adamo did not have the express or implied consent of the intended victim's parent. This contention is belied by the record. The intended victim's mother expressly testified that she did not give Adamo permission to take her child into his car. N.T. 2/20/92 at 19. Adamo also contends that "[a]t no place in the statute or the Crimes Code does the legislature define the word 'child' for purposes of the Crimes Code or explain to what age the statute applies." Appellant's Brief at 14. To the contrary, the word "child" is defined in Kidnapping, Chapter 29 of the Crimes Code. Section 2908(b) defines the term "child" to mean a person under 18 years of age. 18 Pa.C.S. § 2908(b). A like definition appears in 18 Pa.C.S. § 2904(a). All sections of Chapter 29 of the Crimes Code bear upon "kidnapping" and must be read in *pari materia*. Statutes or parts of statutes are in *pari materia* when they relate to the "... same class of persons or things." 1 Pa.C.S. § 1932(a); *Commonwealth v. Dodge*, 410 Pa.Super. 189, 599 A.2d 668 (1991). We agree with the determination of the trial court that there was evidence to prove each of the elements of attempt beyond a reasonable doubt. We find no error.

■ Next, we will address Adamo's attack on the constitutionality of this statute. When reviewing a challenge to the constitutionality of a statute, there is a strong presumption in favor of a finding of constitutionality; an Act of Assembly will not be declared unconstitutional unless it *clearly, palpably* and *plainly* violates the Constitution; all doubts are to be resolved in favor of sustaining the legislation. *Commonwealth v. Blystone*, 519 Pa. 450, 463, 549 A.2d 81, 87 (1988); *Commonwealth v. Santiago*, 376 Pa.Super. 54, 65, 545 A.2d 316, 321 (1988), *appeal denied*, 522 Pa. 595, 562 A.2d 320 (1989).

Foremost, Adamo contends that "[t]he trial court erred in failing to declare the statute, 'Luring a Child into a Motor Vehicle,' 18 Pa.C.S. § 2910, unconstitutional because it was void for vagueness, both as applied and on its face." Appellant's Brief at 16. In support of this contention, Adamo notes that the United States Supreme Court's test for determining if a statute is void for vagueness is set forth in *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Pursuant to the *Papachristou* test, a statute would be void for vagueness if the statute "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, [or] because it encourages arbitrary and erratic arrests and convictions." *Id.*, 405 U.S. at 162, 92 S.Ct. at 843, 31 L.Ed.2d at 115 (citations omitted). The Pennsylvania supreme court has observed, however, that the vagueness doctrine is more complex than a mere reiteration of the *Papachristou* test would indicate:

A statute may be "vague" in the sense that it contains no ascertainable standard of conduct, or it may be "vague" in the sense that the ascertainable standard of conduct may or may not include certain types of conduct. If the statute contains no standard of conduct, or if the standard of conduct prohibits conduct which is protected by the first amendment, the statute will be declared unconstitutionally "vague" without regard to the particular conduct of the individual challenging the statute (hereinafter known as "facial vagueness"). If, however, the statute contains an ascertainable standard which does not infringe upon protected first amendment rights, the "vagueness" issue may be finally determined only with reference to the conduct of the person challenging the statute (citations omitted).

*Commonwealth v. Mack*, 467 Pa. 613, 616–617, 359 A.2d 770, 772 (1976); Appellant's Brief at 17. Adamo then argues that: (1) the term child is undefined by the statute and fails to give notice as to the age of the child to which the statute applies; (2) the term lure fails to give notice as to its meaning; and, (3) the phrase "implied consent" fails to to give notice of what circumstances imply parental consent. Appellant's Brief at 16. This argument does not comport with the record.

Initially, it is clear that Adamo, himself, was aware that this statute contained an ascertainable standard. Adamo stated to the intended victim that "you can't tell anybody I'm ... I'll get in trouble. You're a minor." N.T. 2/20/92 at 6. If the accused actor tells the intended victim that his behavior is proscribed, any argument that the statute does not contain a standard of conduct necessarily fails. Adamo likewise does not argue that this ascertainable standard infringes upon First Amendment rights. Rather, here, Adamo states, without elaboration, that this statute violates First Amendment rights. He provides not a scintilla of support for this proposition in this section of his brief, and we reject Adamo's argument as summarily as he has made it. *Commonwealth v. Shaw*, 494 Pa. 364, 370 n. 3, 431 A.2d 897, 900 n. 3 (1981) (failure to elaborate on mere assertion in brief that admission of confession violated fifth amendment results in waiver); *Commonwealth v. Badman*, 398 Pa.Super. 315, 322–23 n. 2 and n. 3, 580 A.2d 1367, 1370 n. 2 and n. 3 (1990) (issue waived if argument is mere assertion); *Commonwealth v. Long*, 367 Pa.Super. 190, 532 A.2d 853 (1987), *appeal denied*, 518 Pa. 617, 541 A.2d 744 (1988) (we will not review issues that are not properly developed by citation to the record and reference to supporting case law); *Commonwealth v. Sanford*, 299 Pa.Super. 64, 445 A.2d 149 (1982) (same); *see also Commonwealth v. Chew*, 338 Pa.Super. 472, 479 n. 3, 487 A.2d 1379, 1383 n. 3 (1985); *Commonwealth v. Ignatavich*, 333 Pa.Super. 617, 623, 482 A.2d 1044, 1047 (1984).

Since the argument that First Amendment rights are involved has been waived, as the *Papachristou* test provides, we look to Adamo's conduct. On this record, it is unequivocal that Section 2910 is not vague as applied to Adamo since he, himself, articulated to his intended victim that his behavior was proscribed. We again find no error on the part of the trial court.

Next, Adamo contends that the trial court erred in failing to declare the Child Luring Statute unconstitutional as it is facially overbroad. We disagree. In *City of Philadelphia v. Cohen*, 84 Pa.Cmwlth. 200, 202, 479 A.2d 32, 35 (1984), the Commonwealth Court stated:

The overbreadth doctrine allows litigants, who have clearly engaged in unprotected expression, to challenge purportedly overbroad regulations that chill protected expression. The vicarious assertion of First Amendment rights is predicated on the possibility that unconstitutional restriction of expression may deter protected speech by individuals not before the court, and thereby evade judicial review. Because overbreadth adjudication disregards the personal nature of constitutional rights, *substantial* overbreadth is necessary [to find] facial invalidation. Additionally, [the] invalidation threshold for overbreadth increases when the activity regulated moves from speech to conduct having an incidental impact on First Amendment rights (emphasis in original; citations omitted).

Adamo asserts that Section 2910 has a chilling effect on the exercise of protected speech and assembly. He lists examples where a friend or neighbor offers a ride in a car to an adolescent without first gaining parental consent and contends that these situations would be brought within the ambit of Section 2910. The situations described by Adamo are all innocent "offers" of a ride, where parental consent may be implied. Section 2910 is inapplicable because in none of the situations described by Adamo is the offer to the teenager also accompanied by any kind of an inducement. These simple offers do not involve a "lure." To "lure," *inter alia*, is defined as: to tempt by pleasure or gain. Webster's New International Dictionary 1347 (3d ed. 1976).

Where Adamo attempts to show that the Commonwealth has failed to establish a "lure," he misses the point. For this intended victim, the lure was the offer of the one thousand dollars, not the actual money; for a younger child the lure might be a lollypop or a hamburger at McDonald's. For centuries people have used the prospect of pleasure or financial gain to "lure" others into places, situations and investments without producing a single dollar of currency or a promised treat. On these facts, we determine that Adamo attempted to "lure" his intended victim. The other situations

Adamo describes would not fall within the ambit of Section 2910. There is no lure, no promise of pleasure, no enticement nor financial gain involved. Hence, we are constrained to conclude that Adamo has failed to set forth examples wherein Section 2910 would substantially effect constitutionally protected First Amendment rights. This argument is without merit.

In his final issue, Adamo contends that his constitutional right to a speedy trial has been denied by the failure of the trial court to adhere to Pa.R.Crim.P. 1122. Pa.R.Crim.P. 1122, in pertinent part, provides that "[a] verdict shall be rendered in all non-jury cases within seven days after trial." Adamo asserts that he invoked his right to a speedy trial on December 8, 1992, when he filed a motion to dismiss on grounds that Pa.R.Crim.P. 1122 had been violated.

■ This Court has explicitly determined that the Sixth Amendment of the United States Constitution grant of the right to a speedy trial, made applicable to the states through the Fourteenth Amendment, applies to excessive delay in rendering a verdict following trial. *Commonwealth v. Young,* 385 Pa.Super. 136, 560 A.2d 204 (1989). The test to be applied in such cases is the balancing test first applied in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in which the conduct of both the prosecution and the defendant are weighed. *Young,* 385 Pa.Super. at 139, 560 A.2d at 206. This test requires that we assess four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. *Id.*

First it must be determined whether the delay itself is sufficient to trigger further inquiry. *Barker v. Wingo, supra; Jones v. Commonwealth,* 495 Pa. 490, 434 A.2d 1197 (1981). If the delay is sufficient to trigger further inquiry, the reviewing court must balance the length of the delay with the reason for the delay, the defendant's timely assertion of his right to a speedy trial, and any resulting prejudice to the interests protected by the right to a speedy trial. *Barker v. Wingo, supra; Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597 (1980).

 Since Pa.R.Crim.P. 1122 requires that a verdict in a bench trial "shall be rendered within 7 days of trial," it is apparent that a verdict rendered some 61 days after a claimed assertion of rights is sufficient to trigger further inquiry. Therefore, we must balance the length of the delay with the reason for the delay.

The Commonwealth maintains that this right has been waived and observes that in the June 16, 1992 hearing, at the time Adamo waived his right to a jury trial, he was also advised that given the nature of his pretrial motions specifically challenging the constitutionality of 18 Pa.C.S. § 2910 and the busy trial schedule of his counsel, the scheduling of his trial and, consequently the verdict, would necessarily be prolonged. N.T. 6/16/92 at 8–9. Adamo's counsel stated of record that he "would be prepared to submit a brief within a three-month period" with an additional 30 days for the Commonwealth to respond. *Id.* While the briefs were apparently to be in lieu of oral argument, the trial court requested and heard oral argument in this matter on November 4, 1992. No objection to this request by Adamo is reflected in the certified record. Some 34 days later, on December 8, 1992, Adamo affirmatively asserted his Sixth Amendment rights. The trial court rendered a verdict on January 4, 1993, 27 days after Adamo petitioned to be discharged for violation of his speedy trial rights.

In *Young, supra,* where the verdict was rendered 40 months after the conclusion of the non-jury trial, finding that the trial court and the Commonwealth were responsible for the delay through oversight and prejudice to appellant's liberty interests, we vacated the conviction and dismissed the charges. Balancing the factors in the present case, we conclude that the delay was not inordinate and that Adamo bore the responsibility for the bulk of that delay. Since Adamo makes no claim that the delay was the result of deliberate action by the Commonwealth, the next factor we consider is whether Adamo asserted his rights immediately. *See Pounds,* 490 Pa. at 629, 417 A.2d at 600 (failure to file immediate petition weighs against claim). Adamo's failure to file a petition asserting that

he was aggrieved by the delayed verdict for 34 days cannot be regarded as an immediate assertion of his rights.

 The final factor to be considered is prejudice. Our task is to determine whether there has been prejudice in fact. *See Commonwealth v. Glass,* 526 Pa. 329, 336, 586 A.2d 369, 371–372 (1991). Adamo only claims that he suffered increased anxiety and oppressive incarceration while awaiting the verdict. This claim rings hollow in light of the 34–day delay by Adamo in affirmatively asserting his rights. Here, where the trial court entered a verdict 27 days after affirmative notice of Adamo's speedy trial rights when Adamo failed to assert these rights until 34 days after they accrued, we are unable to conclude that Adamo suffered prejudice. On these facts, in the absence of a showing of prejudice, the dismissal of charges for failure to comply with Pa.R.Crim.P. 1122 is not required. *See Commonwealth v. Glover,* 303 Pa.Super. 229, 449 A.2d 662 (1982), *aff'd,* 500 Pa. 524, 528, 458 A.2d 935, 937 (1983).

Accordingly, for the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.